**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LORI CANALE, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>COLGATE-PALMOLIVE CO.<br><br>               Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lori Canale ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

<u>**NATURE OF ACTION**</u>

1.      Colgate-Palmolive Co. ("Defendant") has made millions of dollars selling Colgate Optic White toothpaste based on false hope.  Since 2010, sales of whitening toothpaste have been over $2 billion a year and are continuing to grow.  Colgate knows that whitening toothpaste is the number on sought after type of toothpaste.  To capitalize on consumer demand for whitening toothpaste, Colgate makes false and misleading representations about Colgate Optic White toothpaste to sell Optic White at a premium price.

2.      Since October 2013, Colgate has falsely represented that Colgate Optic White toothpaste "Goes Beyond Surface Stain Removal to Deeply Whiten" teeth.  Since February 2014, Colgate has falsely represented that Colgate Optic White Platinum toothpaste "Deeply Whitens More Than 3 Shades."  Both products contain the same supposed whitening ingredient,

1% hydrogen peroxide.  But the 1% hydrogen peroxide in Optic White does not go beyond surface stain removal, and does not deeply whiten teeth because there is not enough hydrogen peroxide in toothpaste, and the peroxide is not in contact with teeth for long enough.

3.     Based on Colgate's false and misleading "Deeply Whiten(s)" claims, Plaintiff Lori Canale, and the class members she seeks to represent, bought Colgate Optic White at a premium price.  Because Plaintiff and others like her were taken in by Colgate's false promise of deep whitening, Plaintiff brings this class action against Colgate to seek a reimbursement of the premium Plaintiff and the class members paid based on Colgate's representations that Optic White "Deeply Whiten(s)" teeth.

4.     As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class, as defined herein, purchased Colgate Optic White toothpaste.  Plaintiff and the members of the Class purchased Colgate Optic White because they were deceived into believing that Optic White goes beyond surface stains to deeply whiten teeth.  As a result, Plaintiff and members of the Class purchased Colgate Optic White and have been injured in fact because Optic White was not effective for deep whitening or whitening intrinsic stains.  Plaintiff and class members have suffered an ascertainable and out-of-pocket loss.  Plaintiff and members of the Class seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

5.     Plaintiff seeks relief in this action individually and on behalf of all persons in the United States who, within the relevant statute of limitations period, purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum as defined herein on or after February 1, 2014, excluding purchasers in California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia (the "40 State Class").

Plaintiff seeks relief on behalf of the 40 State Class for Colgate's breach of express warranty. Plaintiff also seeks relief in this action individually and on behalf of purchasers of Optic White in New York for Colgate's violations of New York Gen. Bus. Law § 349, and New York Gen. Bus. Law § 350.

## THE PARTIES

6.     Plaintiff Lori Canale is a natural person and a citizen of Connecticut.  Prior to April 2016, Plaintiff Canale was a citizen of New York.  In early 2015, Ms. Canale purchased Colgate Optic White toothpaste at a CVS retail store in Thornwood, New York.  Ms. Canale purchased Colgate Optic White based on claims on Optic White's label, including, but not limited to, claims that that the toothpaste would "Deeply Whiten" teeth, that it "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains unlike ordinary toothpastes."  Ms. Canale also purchased Colgate Optic White based on claims made in its television commercials. One of the commercials Ms. Canale viewed featured a sand dollar that "can absorb stains like teeth" that showed Colgate Optic White "whiten[ing] deeper" than another toothpaste.   Ms. Canale saw these representations prior to and at the time of purchase, and understood them as representations that the Colgate Optic White toothpaste she purchased (1) would deeply whiten her teeth, (2) would go beyond surface stain removal to deeply whiten her teeth, and (3) was clinically proven to whiten teeth with peroxide and go beyond surface stains unlike ordinary toothpaste.  She relied on these representations and warranties in deciding to purchase the Colgate Optic White toothpaste.  Accordingly, these representations and warranties were part of the basis of the bargain, in that Ms. Canale attributed value to these promises and would not have purchased Colgate Optic White toothpaste, or would have paid a substantially reduced price for Colgate Optic White toothpaste had she known that these representations and warranties were false and misleading.  Although she purchased and used Colgate Optic White as directed,

Colgate Optic White did not deeply whitened her teeth, or affect any of the intrinsic stains on her teeth.

7.     Defendant Colgate Palmolive Co. is a Delaware corporation with its principal place of business at 300 Park Avenue, New York, New York 10022.  Colgate Palmolive Co. is engaged in the business of manufacturing, mass marketing, and distributing Colgate Optic White toothpaste throughout the United States.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff purchased Optic White in this District, and Optic White is sold extensively in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

A.     Colgate Optic White's False and Misleading Labels and Advertising

10.     Colgate falsely claims on Colgate Optic White labels that Optic White "Goes Beyond Surface Stain Removal To Deeply Whiten" teeth.  The Colgate Optic White toothpaste at issue includes Colgate Optic White Sparkling White, Colgate Optic white Icy Fresh, Colgate Optic White Enamel White, Colgate Optic White Sparkling Mint, and Colgate Optic White Mild Mint.

11.     Colgate falsely claims on the labels of the Optic White Platinum products at issue that Optic White Platinum "Deeply Whitens More Than 3 Shades."  The Colgate Optic White Platinum toothpaste at issue includes Colgate Optic White Platinum White & Radiant (formerly

4

known as Optic White Platinum Whiten & Protect), and Colgate Optic White Platinum Lasting

White (formerly Optic White Platinum Whiten & Protect).

12.     As shown below, the labels of Colgate Optic White toothpaste falsely represent

that it "Deeply Whitens," "Goes Beyond Surface Stain Removal To Deeply Whiten," and that

"Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond

surface stains unlike ordinary toothpastes."  In fact, toothpastes cannot go beyond surface stains

to deeply whiten teeth because peroxide in toothpaste does not function as a whitening agent on

intrinsic stains.  Instead, Optic White only reaches surface stains (created on the surface of teeth

by substances like wine, coffee, or tobacco) by abrading the surface of teeth.[1]  Thus, Defendant's

"deeply whitens" representations on Colgate Optic White's labels are false and misleading.





---

[1] *See e.g.*, Webb, Camille, *The Toothpaste Trance*, UT Dentists (Oct. 8, 2014) (*available at*
https://www.utdentists.com/2014/10/toothpastetrance/).



13.     Defendant makes the same "deeply whitens" misrepresentations in television commercials.  For example, one commercial begins with the tagline "How much whiter can your smile be?"  So that consumers can find out how much whiter their smile can be, Defendant "Introduc[es] new Colgate Optic White Whitening Protect Toothpaste."  To illustrate Optic White's supposed deeply whitening capabilities, as shown below, Defendant use a dramatization of a shell dipped in wine that "is made of calcium that can absorb stains like teeth."



14.     The commercial goes on to explain, "Brush one side with regular whitening toothpaste and the other side with Optic White.  It whitens deeper."  To emphasize the

commercial's message that Optic White works by whitening intrinsic stains, beneath the shell illustration, Defendant underscores that "Colgate Optic White can penetrate to work below the tooth's surface."



15.    Because toothpaste only reaches surface stains, Defendant's shell commercial is false and misleading.

16.    Defendant highlights the same "deeply whitens" message in another commercial featuring a series of smiling women adorning themselves with sunglasses, small purses, hats and other accessories while brushing with Colgate Optic White toothpaste.  The commercial begins "Now your best accessory can be your smile with Colgate Optic White Toothpaste."



17.     While depicting sparkly Optic White particles reaching below surface stains to whiten teeth (shown below), the commercial continues, "Unlike the leading whitening toothpaste, Colgate Optic White toothpaste goes beyond surface stains to deeply whiten teeth."



18.     Like Defendant's labeling and shell commercial, Defendant's accessories commercial conveys the false and misleading message that Colgate Optic White deeply whitens teeth by acting as a whitening agent on intrinsic stains.

B.     **Colgate Optic White Toothpaste Does Not "Deeply Whiten" Teeth**

19.     Defendant's representations that Colgate Optic White toothpaste "Deeply

Whitens," "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White

toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains

unlike ordinary toothpastes" are false and misleading because peroxide in toothpaste does not go

beyond surface stains or deeply whiten teeth.  In fact, dentists agree that peroxide in toothpaste

does not work on intrinsic stains because the amount of peroxide in toothpaste is too small and

gets rinsed away before it can deeply whiten teeth.

20.     As Dr. De Vizio, DMD, Vice-President for Dental Clinical Research at Colgate-

Palmolive, explained on behalf of Defendant:

> **Whitening toothpastes have some disadvantages.  They don't actually whiten
> your teeth.  Instead, they contain an abrasive that grinds away stains on the
> enamel, making your teeth seem brighter.  When used for a long time, the
> abrasive can remove so much enamel that your teeth can get stained even
> more easily.  In addition, using abrasive whitening toothpastes can dull
> veneers and crowns.  <u>Toothpastes with hydrogen peroxide for whitening
> don't really help much.  Because the toothpaste gets all over your mouth,
> including your gums, and because you might swallow some, the amount of
> hydrogen peroxide is small.  In addition, you probably won't brush long
> enough for the hydrogen peroxide to have much of an effect.</u>**[2]

21.     Dr. Vincent Mayher, dentist and the past president of the Academy of General

Dentistry, similarly emphasized:

> There's no doubt that whitening toothpastes can clean stains off teeth and give
> them a little extra gleam.  But the term "whitening" is misleading.  **Unlike trays
> and strips that can bleach deep within a tooth … toothpastes can reach only**

---

[2] De Vizio, *What are the disadvantages of using whitening toothpaste?*, Teeth Whitening,
Sharecare (July 27, 2011) (*available at* http://www.sharecare.com/health/teethwhitening/
Disadvantagesofusingwhiteningtoothpaste); *see also* Dr, De Vizio DMD, Profile (*available at*
http://www.sharecare.com/user/dr-william-devizio).

**the surface … bleaches in toothpastes are useless because they'll get rinsed away before they do anything.**[3]

22.    Yet another dentist, Dr. Mark Burhenne DDS explains "How Toothpaste Packaging Messes With Your Mind" as follows:

> The newer whitening toothpastes whiten your teeth chemically with a hydrogen peroxide-based chemical.  **These toothpastes contain the right chemical for whitening, but you're never going to get the results with only two, or even five minutes of brushing.**
>
> **Proper whitening requires you to hold the peroxide up against the tooth for several hours or more.**  You can think of the second type of whitening toothpaste like sandpaper – the increased abrasiveness in whitening toothpaste helps to polish and remove surface staining.  This is effective for removing surface staining from coffee, tea, and berries.
>
> **Be aware that you are only removing stains, not changing the intrinsic color of your teeth.**
>
> I don't recommend these toothpastes because they remove tooth structure by scraping away dentin and enamel.[4]

23.    Likewise, the material for a continuing education course, implemented in accordance with the standards of the Academy of General Dentistry Program, teaches that:

> **Toothpastes with hydrogen peroxide are not very effective** because the peroxide reacts with other substances on the teeth.  The effectiveness is also dependent on the duration of time peroxide is on the teeth.  The longer it is in contact with the tooth surface, the better it works.  **Since brushing is usually done quickly, peroxide does not have much time to work properly.**[5]

---

[3] *See* Woolston, Chris, *Are Whitening Toothpastes a Bright Idea?*, The Healthy Skeptic, Los Angeles Times (July 4, 2011) (*available at* http://articles.latimes.com/2011/jul/04/health/la-he-skeptic-whitening-toothpaste-20110704).

[4] Burhenne, Mark, *How Toothpaste Packaging Messes With Your Mind*, Ask the Dentist (Oct. 15, 2014) (*available at* http://askthedentist.com/toothpastemarketing/)

[5] Dynamic Dental Educators, *Teeth Whitening*, ADA Continuing Education Recognition Program (May 1, 2014).

24.    Dr. Joe Oliver at London's Welbeck Clinic also explained his skepticism about the efficacy of the small amount of peroxide (0.1 %) in toothpaste:

> Unless a peroxide toothpaste is left in contact with teeth for 30 minutes it's probably not going to have an effect.[6]

25.    Richard Bebermeyer, DDS, MBA and retired professor and former chairman of restorative dentistry and biomaterials at The University of Texas Health Science Center at Houston (UTHealth) School of Dentistry also agrees that intrinsic staining cannot be achieved with toothpaste.[7]

26.    Donna Warren-Morris, a registered dental hygienist and professor at the University of Texas School of Dentistry agrees and adds that "to whiten or bleach the teeth to any significant degree, the hydrogen or carbamide peroxide concentration has to be much higher than can be found in whitening toothpastes."[8]  Another registered dental hygienist, Kristina Kucinskaite, also commented that whitening toothpaste with peroxide is not in contact with the enamel surface of teeth for long enough and had too little peroxide because "[r]eal whitening needs peroxide and time."

27.    Colgate's competitor, Procter & Gamble ("P&G"), explained Optic White's inability to deeply whiten teeth as follows:

> To enable peroxide to intrinsically whiten teeth, it must be (1) held in sustained contact with the tooth surface for an extended period of time and be (2) protected from saliva.  As Colgate itself acknowledges, saliva contains a high level of the enzyme catalase, which rapidly converts peroxide into gaseous

---

[6] Coleman, Claire, *Is whitening toothpaste just a waste of money?*, Daily Mail, (Jan. 20, 2013 (*available at* http://www.dailymail.co.uk/femail/article-2265539/Is-whitening-toothpaste-just-waste-money-They-promise-dazzling-Hollywood-smile-investigation-reveals-products-barely-make-difference.html)

[7] Webb, Camille, *The Toothpaste Trance*, UT Dentists (Oct. 8, 2014) (*available at* https://www.utdentists.com/2014/10/toothpastetrance/).

[8] *Id.*

oxygen and water, even as salivary flows wash away the peroxide. These decomposition and dilution effects are well documented in peer review literature and have been publicly accepted by Colgate's scientists and engineers. Clinical research has also proven the point. ….

Optic White has a very low concentration of peroxide, remains in the vicinity of the tooth surface for a very short period of time (typically, 2 minutes or less per brushing), over time provides much less aggregate exposure of peroxide to the tooth surface (whitening efficiency), and lacks a barrier to protect against the effects of saliva.

28.     In a patent application for a non-toothpaste whitening product, like P&G, Colgate explained that "saliva, contains high concentrations of the enzyme catalase, which on contact, rapidly decomposes the peroxide" and that "the low viscosities of aqueous peroxide solutions do not allow the peroxide whitening agent to remain in contact with the teeth for as long as is necessary to effect substantive whitening because of the constant flushing effects of salivary secretions."

29.     P&G also conducted clinical studies to evaluate the intrinsic whitening performance of Optic White. Those study results showed that Optic White did not provide an intrinsic whitening benefit. For example, one study found that: "After 1 and 4 weeks of product use, neither [Crest Cavity Protection nor Optic White] demonstrated improvement in tooth color relative to Baseline."[9] Another study showed that "use of [Optic White] whitening paste did not demonstrate significant changes."[10] Yet another study concluded that: "After 1 week of use, the whitening toothpaste [Optic White] did not demonstrate significant improvement of yellowness and lightness color parameters."[11] Similarly, in a study that compared Optic White to whitening

[9] Cronin M, *Effects of H202 Containing Whitening Dentifrice on Post-prophylaxis Tooth Color* (2013).

[10] Garcia-Godoy, *2-Week Comparative Efficacy of Whitening Strips and Whitening Paste* (2013).

[11] Biesbrock A.R., *Short-Term Efficacy of Marketed Whitening Toothpaste Relative to Negative Control* (2013).

strips, Optic white did not have statistically significant mean color improvement for yellow or lightness color parameters at both one week and four week study visits.[12]

30.     Moreover, additional scientific research shows that the whitening effect of hydrogen peroxide in toothpaste is not clinically significant.  As researchers summarized in the Brazilian Dental Journal:  "In vitro studies show that brushing with toothpaste containing bleaching products do not promote significant results in discolored teeth compared to conventional dentifrices [toothpastes], concluding that these dentifrices, due to their mechanical action (abrasion) and the increase of high-performance abrasives as hydrated silica, act just at removing pigmentation, giving a false sense of whitening."[13]

31.     In another example, in the Brazilian Oral Research Journal, researchers explained that the whitening effect obtained from whitening toothpastes is not clinically significant because a "study that compared the efficacy and safety of three OTC bleaching products (1% hydrogen peroxide dentifrice [toothpaste], 18% carbamide peroxide paint-on gel, and 5% carbamide tray system) showed that  … **the paint-on gel and dentifrice [toothpaste] groups did not result in significant color improvements from baseline**."[14]

32.     Colgate Optic White only makes teeth appear whiter because it contains an abrasive that grinds away stains on the enamel.  Using abrasive whitening toothpaste can remove enamel exposing the yellowish dentin beneath the surface, which can also cause teeth to stain more easily.  Indeed, Colgate Optic White received a Relative Dentin Abrasion (RDA) score of

---

[12] Farrell S., *Whitening Efficacy of 9.5% H202 Strips and 1% H202 Paste* (2013).

[13] Horn, Bruna Andrade, *Clinical Evaluation of the Whitening Effect of Over-the-Counter Dentifrices on Vital Teeth*, Braz. Dent. J. Vol. 25 No. 3 (2014).

[14] Demarco, Flavio, *Over-the-counter whitening agents: a concise review*, Braz. Oral Res. Vol. 23 Supl.1 (2009).

100, and is considered *highly* abrasive, or even more abrasive than the majority of whitening toothpastes.[15]

C.   **The National Advertising Division Concluded That Defendant Misled Consumers by Claiming That Colgate Optic White Deeply Whitens Teeth**

33.   In 2012, the National Advertising Division of the Council of Better Business Bureaus ("NAD") found that Defendant did not have sufficient evidence to support the message that hydrogen peroxide as contained in Optic White functions as a significant whitening agent on intrinsic stains.  Specifically, the NAD cautioned that Colgate should avoid conveying the message that whitening improvement from Optic White toothpaste is attributable to the peroxide contained in Optic White.  Accordingly, the NAD recommended that Defendant discontinue claims that suggest that hydrogen peroxide in toothpaste deeply whitens and whitens below surface stains.  Defendant, however, refused to change their advertising and continues to make claims about the intrinsic whitening capabilities of Colgate Optic White.[16]

34.   In 2014, the NAD again conducted a compliance inquiry because, in the latest advertising for Colgate Optic White toothpaste, Defendant's Optic White packaging claims that Optic White toothpaste, "Goes Beyond Surface Stain Removal to Deeply Whiten," that "This Unique Formula is Clinically Proven to Whiten Teeth With Peroxide," and that Optic White "Goes Beyond Surface Stains Unlike Ordinary Toothpastes." [17]

---

[15] Sorin, Robert, *Toothbrush Abrasion* (*available at* http://www.nycdmd.com/toothbrush-abrasion-2/).

[16] *NAD Recommends Colgate Discontinue Certain Claims for Optic White Toothpaste*, Advertising Self-Regulation Council (Aug. 14, 2012) (*available at* http://www.asrcreviews.org/2012/08/nad-recommends-colgate-discontinue-certain-claims-for-optic-white-toothpaste-following-pg-challenge/).

[17] *NAD Refers Advertising from Colgate to FTC for Further Review*, Advertising Self-Regulation Council (July 16, 2014) (*available* http://www.asrcreviews.org/2014/07/nad-refers-advertising-from-colgate-to-ftc-forfurther-review/).

35.     In response to the NAD's compliance inquiry, Defendant claimed that Optic White had been "reformulated" and that new evidence supported the claims made for the "reformulated" Optic White's intrinsic whitening capabilities.  The NAD disagreed because the amount of peroxide in Optic White had not changed.  In particular, the NAD observed "[t]hat changes to the reformulated product are of little consequence with respect to the advertiser's claims of Optic White's ability to provide whitening benefits below the tooth surface."  Further, the NAD found that the claim challenged in the 2014 compliance proceeding was not markedly different from the claim that it recommended be discontinued in 2012.  Thus, the NAD found "that the claim 'whitens deeper' and related claims contravene NAD's earlier decision and recommendations and recommended that the company modify its broadcast advertising to remove the word 'deeper' and to avoid any implication that the Optic White product intrinsically whitens teeth."  Defendant again refused to bring its advertising into compliance with the NAD's decision and recommendations.[18]

## TOLLING OF THE STATUTE OF LIMITATIONS

36.     Plaintiff was a member of the putative nationwide class in *Dean v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107-JGB, filed January 16, 2015 in the United States District Court for the Central District of California.

37.     Due to the filing of the *Dean* case, the statute of limitations for the claims asserted herein has been tolled since at least January 16, 2015.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").

---

[18] *Id.*

38.     On April 29, 2016, the *Dean* plaintiff filed her motion for class certification, which seeks to certify a class defined as: "All persons in California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia who purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum on or after February 1, 2014."

39.     As a result, Plaintiff's claims, and the claims of purchasers of Optic White and Optic White Platinum residing in the other 40 state, are no longer being asserted in *Dean*.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum on or after February 1, 2014, excluding purchasers in California, Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia (the "40 State Class").

41.     Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased Optic White in New York ("the New York Subclass").

42.     Excluded from the Classes are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

43.     Also excluded from the Classes are persons or entities that purchased Optic White for purposes of resale.

44.     Plaintiff is a member of the Classes she seeks to represent.

45.     The Classes are so numerous that joinder of all members is impractical.  Although Plaintiff does not yet know the exact size of the Classes, Optic White is sold in major retail stores across the United States, including stores such as CVS, Target, and Walgreens.  Major online retailers include Amazon.com and Drugstore.com.  Upon information and belief, the Class includes more than one million members.

46.     The Classes are ascertainable because the Class Members can be identified by objective criteria – the purchase of Colgate Optic White toothpaste during the Class Period.  Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

47.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

1.      Whether Defendant breached an express warranty made to Plaintiff and the Class;

2.      Whether Defendant's marketing of Optic White is false, misleading, and/or deceptive;

3.      Whether Defendant's marketing of Optic White is an unfair business practice;

4.      Whether Optic White goes beyond surface stains to deeply whiten teeth;

5.      Whether Optic White is clinically proven to whiten with peroxide and to go beyond surface stains to deeply whiten teeth;

6.      Whether Defendant violated the GBL;

7.      Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations; and

8.      Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

49.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

50.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## COUNT I
### (Breach of Express Warranty)

51.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

52.     Plaintiff brings this Count individually and on behalf of the members of the 40 State Class.

53.     In connection with the sale of Optic White, Defendant issued express warranties including that Optic White would go beyond surface stains to deeply whiten teeth, that Optic White is clinically proven to whiten teeth with peroxide and to go beyond surface stain removal to deeply whiten teeth, and that Colgate Optic White penetrates to work below the tooth's surface.  Defendant expressly warranted that Optic White was effective and would whiten intrinsic stains below the tooth's surface.

54.     Defendant's affirmations of fact and promises made to Plaintiff and the Class on Optic White labels and in television commercials, became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Class Members on the other, thereby creating express warranties that Optic White would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

55.     Defendant breached its express warranties because Optic White does not in fact deeply whiten teeth, does not go beyond surface stain removal, and is not clinically proven to whiten with peroxide below the tooth's surface.  In short, Optic White does not perform as expressly warranted.

56.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Optic White if they had known the true facts; (b) they paid for Optic White due to the mislabeling; and (c) Optic White did not have the quality, effectiveness, or value as promised.  As a result, Plaintiff and the Class have

been damaged by the difference in value between Optic White as advertised and Optic White as actually sold.

## COUNT II
### (Deceptive Acts Or Practices, New York Gen. Bus. Law. § 349)

57.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

58.     Plaintiff brings this Count individually and on behalf of the members of the New York Subclass.

59.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendant's misrepresentations that Optic White "Deeply Whitens" teeth, that it "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains unlike ordinary toothpastes."

60.     The foregoing deceptive acts and practices where directed at  consumers

61.     The foregoing deceptive acts and practice are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of Optic White to induce consumers to purchase Optic White.

62.     Plaintiff and members of the New York Subclass were injured because:  (a) they would not have purchased Optic White had they known that Optic White would not deeply whiten teeth, that it did not go beyond surface stain removal to deeply whiten teeth, and that it was not clinically proven to whiten teeth with peroxide and go beyond surface stains unlike ordinary toothpaste; (b) they overpaid for Optic White because it is sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) Optic White did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York

Subclass were damaged by the difference in value between Optic White as advertised and Optic White as actually sold.

63.     As a result of Defendant's false, misleading, and deceptive statements and representations of act, including but not limited to the misrepresentations described herein, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

64.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations equal to the price premium.

65.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### (False Advertising, New York Gen. Bus. Law. § 350)

66.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

67.     Plaintiff brings this Count individually and on behalf of the New York Subclass.

68.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendant's misrepresentations that Optic White "Deeply Whitens" teeth, that it "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide.  It goes beyond surface stains unlike ordinary toothpastes."

69.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

70.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

71.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, have resulted in consumer injury or harm to the public interest.

72.     Plaintiff and members of the New York Subclass were injured because:  (a) they would not have purchased Optic White had they known that Optic White would not deeply whiten teeth, that it did not go beyond surface stain removal to deeply whiten teeth, and that it was not clinically proven to whiten teeth with peroxide and go beyond surface stains unlike ordinary toothpaste; (b) they overpaid for Optic White because it is sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) Optic White did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York Subclass were damaged by the difference in value between Optic White as advertised and Optic White as actually sold.

73.     As a result of Defendant's false, misleading, and deceptive statements and representations of act, including but not limited to the misrepresentations described herein, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

74.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations equal to the price premium.

75.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      For an order certifying the 40 State Class and New York Subclass of consumers who purchased Optic White;

B.      For an order declaring that the Defendant's conduct violates the statutes referenced herein;

C.      Awarding compensatory, statutory, and punitive damages in favor of Plaintiff, members of the Class, and the New York Subclass against Defendant for all damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

D.       Awarding injunctive relief against Defendant to prevent Defendant from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.      For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.      Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.      Awarding such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  May 3, 2016                    Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:_____*/s/ Joseph I. Marchese*_____
                Joseph I. Marchese
Scott A. Bursor
Joseph I. Marchese
Frederick J. Klorczyk
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
         jmarchese@bursor.com
         fkloczyk@bursor.com
         pfraietta@bursor.com

*Counsel for Plaintiff*