UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LORI CANALE, individually and on behalf of  :
all others similarly situated,  :
 :
                                     Plaintiff,  :              16-CV-3308 (CS)
 :
     -against-  :            **OPINION & ORDER**
 :
COLGATE-PALMOLIVE CO.,  :
 :
                                 Defendant.  :
------------------------------------------------------------------------X

Seibel, J.

      At a December 1, 2016 pre-motion conference, I alerted the parties that because I had purchased Colgate Optic White toothpaste, the product at issue in this putative class action, in New York, I am likely a member of the putative class, and could potentially share in any recovery Plaintiff secures on behalf of those similarly situated. I thought I had to recuse myself but invited the parties to make submissions as to why recusal might not be required, which Defendant did on December 13, 2016. (Doc. 23.) For the reasons discussed below, I find that recusal is not required, provided that I renounce class membership and any claim I may have arising from the representations made with respect to the toothpaste's whitening capability, which I do.

**I. DISCUSSION**

A. Legal Standard

      A trial judge must use her discretion to determine whether recusal is required. *See In re Certain Underwriter Defendants*, 294 F.3d 297, 302 (2d Cir. 2002). A judge must recuse where appropriate even if the parties have not so moved. *See In re Initial Pub. Offering Sec. Litig.*, 174

F. Supp. 2d 70, 74-75 (S.D.N.Y. 2001), *aff'd sub nom. In re Certain Underwriter Defendants*, 294 F.3d 297.  On the other hand, a judge may not recuse herself unless the law requires recusal. *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."); *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.").

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  In addition, a judge must disqualify herself if she "has a financial interest in the subject matter in controversy or in a party to the proceeding," or an interest, financial or otherwise, "that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(4), or when she "[i]s a party to the proceeding," *id.* § 455(b)(5)(i).

My purchase of Colgate Optic White toothpaste renders me at least a potential "party to the proceeding," and gives me a financial interest (albeit a minor one) in the subject matter of the case.

The recusal statute also contains an exception:

> Notwithstanding the preceding provisions of this section, if any . . . judge . . . to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she . . . has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the . . . judge . . . divests himself or herself of the interest that provides the grounds for disqualification.

*Id.* § 455(f).

In deciding whether to recuse myself, I first address whether the § 455(f) exception is available.  I then address whether I have the option of renouncing my interest as a putative class member at the outset of the case, and if so, whether § 455(a) or (b) still require recusal.

2

B.  Section 455(f)

Section 455(f) allows a judge to avoid recusal by divesting of the financial interest requiring recusal, provided both that the divestiture occurs "after substantial judicial time has been devoted to the matter" and that the interest is not one "that could be substantially affected by the outcome."  28 U.S.C. § 455(f); *see In re Certain Underwriter Defendants*, 294 F.3d at 304.[1]  Class membership itself is not an interest "substantially affected by the outcome," *In re Certain Underwriter Defendants*, 294 F.3d at 304, and I have no interest that could be substantially affected,[2] so whether § 455(f) is available depends on whether I have expended "substantial judicial time" on this matter, *see id.*

> [M]easuring "substantial judicial time" means examining the time and effort a district court invests in a matter, rather than simply counting off days on the calend[a]r to see if "substantial" time has passed.  The inquiry is thus properly focused on the amount of work a case requires, not on calend[a]r time.

*Id.*

Plaintiff filed her complaint on May 3, 2016, (Doc. 1), and a plaintiff in a similar action moved before the Judicial Panel on Multidistrict Litigation ("JPML") to transfer this case and consolidate it with two other similar cases, (Doc. 11).  In light of the JPML's decision not to consolidate, I denied the motion to transfer in a one-sentence order.  (Doc. 14.)  Defendant then requested a pre-motion conference for its proposed motion to dismiss the complaint, (Doc. 18), Plaintiff responded to Defendant's letter, (Doc. 20), and the Court held the conference on December 1, 2016.  As the extent of the time I spent working on this case consisted of my brief preparation for the December 1 conference, I find that I have not expended "substantial judicial

---

[1] The language of § 455(f) is limited to disqualifications arising from "a financial interest in a party," but the Second Circuit has held that it also applies where the judge is a party with an insubstantial financial interest in the subject matter.  *See In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 141-42 (2d Cir. 2007).

[2] My interest here is indeed minor.  I purchased a package of four or five tubes of the toothpaste at Costco.  If class members were to receive 100 percent of their money back, my recovery would likely be in the $20-25 range.

3

time" on this case, and thus that § 455(f) is not available to avoid recusal.  *See Haus v. City of N.Y.*, No. 03-CV-4915, 2008 WL 623344, at *1 (S.D.N.Y. Feb. 29, 2008) (recusal not required after supervising pretrial proceedings through discovery and renouncing putative class membership).

C. Prospective Divestiture

While I may not take advantage of the § 455(f) exception, the question remains as to whether prompt divestiture at the outset of a case of any interest as a putative class member is permitted and cures the grounds for recusal contained in § 455(a) and (b).  *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 80-81.

1. *Section 455(b)*

Section 455(b)(5)(i) requires recusal if a judge is a "party to the proceeding."  "[J]udges with minor interests in a class action" are not "parties to a proceeding once they have divested themselves of said financial interest."  *In re Certain Underwriter Defendants*, 294 F.3d at 305.

Section 455(b)(4) requires recusal if a judge "knows that [s]he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."  As discussed above, class membership is not an interest "substantially affected by the outcome of the proceeding," *see In re Certain Underwriter Defendants*, 294 F.3d at 304, but would be a "financial interest in the subject matter in controversy," 28 U.S.C. § 455(b)(4).  The statute is silent as to whether recusal is required if a judge divests of her interest at the outset of the case.  *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 81; *see also Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir. 1986) ("It is not apparent however whether the statute covers the situation where the judge *had* a financial interest in a party, without knowing it; divested

4

himself of the interest as soon as he discovered it; and made no rulings between the date of discovery and the date of divestment.") (emphasis in original).

*In re Initial Public Offering Securities Litigation* involved hundreds of securities actions consolidated before Judge Scheindlin, who had purchased and sold several of the underlying stocks during the relevant time period.  174 F. Supp. 2d at 77-79.  In answering the question of "whether 28 U.S.C. § 455 allows a court to preside over a case if it promptly removes a conflict at the outset of a proceeding," *id.* at 80, Judge Scheindlin answered affirmatively, explaining that "[c]ourts may always take measures at the *outset* of a proceeding to remove potential conflicts," *id.* at 90 (emphasis added).  If, however, a court expends time presiding over a case "while maintaining a conflict of interest, it must disqualify itself."  *Id.*  She held that Congress intended § 455(f) to carve out an exception to the latter rule where "the conflict involves a financial interest in a party, [in which case] a court may divest itself of the interest retroactively in order to remain on the case," *id.*, but that § 455(f) was not intended to prohibit such divestiture at the outset, *id.* at 86-87.  She ruled that § 455(f) did not apply because she had not expended substantial judicial time, but that Congress's adoption of § 455(f) did not "affect[] the ability of a court to take steps *prospectively* to eliminate a potential conflict."  *Id.* at 87 (emphasis in original).

The Second Circuit affirmed, not because it found § 455(f) inapplicable, but because it found § 455(f) was met because the trial court had done substantial work even though the case was still in its early stages  *See In re Certain Underwriter Defendants*, 294 F.3d at 304.  The court explained that Congress adopted § 455(f) to address *In re Cement Antitrust Litigation*, 688 F.2d 1297 (9th Cir. 1982), a case in which a judge had to recuse himself from a class action after five years because he discovered that his wife owned stock in seven of the 210,000 class

members.  *See In re Certain Underwriter Defendants*, 294 F.3d at 304.  Section 455(f), according to the court, remedied that result by allowing a judge to, without recusal, retroactively cure any decisions made while under a conflict.  *See id.*  The Second Circuit held that § 455(f) was available to Judge Scheindlin because she had indeed expended substantial judicial time overseeing the securities actions.  *Id.*  It was thus unnecessary to reach the question of whether a trial judge may cure any grounds for recusal under § 455(a) and (b) by "prospectively divest[ing] of [a financial interest] before substantial judicial time was invested."  *Id.*; *see also id.* at 303 ("As we find recusal unnecessary based on the district court's investment of substantial judicial time in the Securities Actions, we offer no opinion as to the district court's findings regarding 28 U.S.C. § 455(b)(4).").  Because I have not expended substantial judicial time, I must reach that question now.

     I agree with Judge Scheindlin that § 455 allows a judge to divest of an interest as a putative class member at the outset of a case to avoid recusal.  This makes sense from a literal reading of the statute, which requires recusal when a judge knowingly "*has* a financial interest in the subject matter in controversy or in a party to the proceeding."  28 U.S.C. § 455(b)(4) (emphasis added).  Obviously, divesting of the financial interest means that a judge no longer "has" that interest.  Congress could have broadened the scope of § 455(b)(4) by requiring recusal when a judge "has or had" a financial interest, and its silence is instructive.  *See Union Carbide*, 782 F.2d at 714 (no indication that Congress intended judge to recuse if she did not currently hold interest in case).  Further, Judge Scheindlin's exhaustive canvass of the law before § 455(f) was enacted and her exploration of the legislative history of that statute make clear that Congress, in enacting § 455(f), intended only to permit divestiture of newly discovered financial interests in a party after substantial judicial time had been spent on a case, not to prohibit the

common practice of divesting at the outset to cure conflicts. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 81-87.

Several other courts have come to the same conclusion. *See Corr v. Metro. Wash. Airports Auth.*, 481 F. App'x 616, 616-17 (Fed. Cir. 2012) (for putative member of uncertified class, "the appropriate course is to renounce any financial interest that could arise from class membership"); *Fero v. Excellus Health Plan, Inc.*, No. 15-CV-6569, 2015 WL 7076387, at *1 (W.D.N.Y. Nov. 10, 2015) (same); *see also Litwin v. Am. Express Co.*, 838 F. Supp. 855, 857 n.1 (S.D.N.Y. 1993) (on motion to dismiss, judge stated that he and his family, as potential members of an uncertified class, opted out of class action against defendant and waived any right to recovery); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 311 n.15 (N.D. Ga. 1993) ("The Court and all of its relatives within the third degree necessarily elected to exclude themselves from the settlement class.").[3] Indeed, one or more members of the JPML who could be members of the putative classes renounced participation in the classes and participated in the decision not to consolidate. (Doc. 17.)

Cases outside of this circuit have suggested that prospective divestiture cannot cure the grounds for recusal. *See Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1031-32 (5th Cir. 1998);

---

[3] Several decisions have found divestiture to cure the grounds for recusal, but based this conclusion on an application of § 455(f). *See Suever v. Connell*, 681 F.3d 1064 (9th Cir. 2012); *Stern v. Gambello*, 678 F.3d 797 (9th Cir. 2012); *Loef v. First Am. Title Ins. Co.*, No. 08-CV-311, 2012 WL 2913546 (D. Me. July 16, 2012). In *Stern*, the court noted that it made its decision not to recuse "[a]fter considerable pre-argument preparation," thus bringing it within the "substantial judicial time" requirement of § 455(f). 678 F.3d at 798. In *Loef*, the judge decided not to recuse because he had "invested substantial time in this case," and thus his decision was "authorized by § 455(f)." 2012 WL 2913546, at *3 (internal quotation marks omitted). The court in *Suever* did not comment on how much judicial time it had expended before divestiture, but nevertheless relied on *Stern* to find § 455(f) applicable. 681 F.3d at 1065. Given that the plain language of § 455(f) and the Second Circuit's interpretation both require that divestiture occur "after substantial judicial time" – which has not occurred here – I decline to base my decision not to recuse on § 455(f). *See In re Certain Underwriter Defendants*, 294 F.3d at 303 ("*[I]f* the discovery of Judge Scheindlin's IPO investments came *after 'substantial judicial time' was devoted* to the Securities Actions, and her interest was not one that could be substantially affected by the outcome, she could properly divest . . . without recusing herself . . . .") (emphasis added).

7

*Gordon v. Reliant Energy, Inc.*, 141 F. Supp. 2d 1041, 1045 (S.D. Cal. 2001).  In *Tramonte*, the trial judge's relative was a potential member of the uncertified class.  *Tramonte*, 136 F.3d at 1029.  The trial judge denied a motion to recuse herself based on that fact, reasoning that her relative had no desire to join the potential class.  *See id.*  The Fifth Circuit vacated her decision because the record was insufficient to determine the extent of her family members' interests or how attenuated her family connection was.  *Id.* at 1030-31.  The court rejected the trial judge's assertion that her relative's divestiture of the interest would cure the ground for recusal, holding that Congress relied on the dissent in *Union Carbide* – which argued that Congress intended that § 455(b) be absolute – in adopting § 455(f) to allow divestiture as a cure only after a court devotes "substantial judicial time."  *Id.* at 1031.  *Gordon* likewise held that § 455(b)'s recusal provisions were "mandatory," and curative divestiture was only available via § 455(f), after substantial judicial time had been devoted.  141 F. Supp. 2d at 1045.  These holdings, as Judge Scheindlin described, are flawed.  *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 89.  First, the plain text of § 455(f) makes clear that Congress intended the new provision to carve out an exception while maintaining the existing provisions of § 455(a) and (b), *see* 28 U.S.C. § 455(f) ("Notwithstanding the preceding provisions of this section, . . . ."), and Congress in enacting § 455(f) may be presumed to have been aware of the case law allowing divestiture at the outset, *see United States v. Bidloff*, 82 F. Supp. 2d 86, 95 (W.D.N.Y. 2000) ("Congress is presumed to know the state of federal law against which it legislates."); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 83-85 (describing pre-§ 455(f) case law allowing divestiture at outset).[4]  Second, it is well understood that Congress intended to address the

---

[4] As Judge Scheindlin pointed out, the legislative history from the initial enactment of § 455 also envisioned divestiture at the outset as a cure for disqualification, *see In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 82-83, and Congress may be presumed to have been aware of that history as well.

8

inefficient outcome in *In re Cement* by adopting the § 455(f) exception, not to incorporate the dissent from *Union Carbide* or disturb the common practice of curing by divesting at the outset of the case. *See In re Certain Underwriter Defendants*, 294 F.3d at 304 (citing H.R. Rep. No. 100-889, *reprinted in* 1988 U.S.C.C.A.N. 5982, 6029) ("Specifically, Congress was troubled by the outcome of *In re Cement* . . . ."); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 86 ("Congress not only had a specific problem in mind, it had a specific case in mind.") (internal quotation marks omitted). Accordingly, I decline to follow *Tramonte* and *Gordon*.

Interpretations of the Code of Conduct governing federal judges, which has a recusal requirement analogous to § 455, *see* Code of Conduct for United States Judges, Canon 3(C); *see also In re Literary Works*, 509 F.3d at 140 (section 455 is "more-or-less identical" to its Code of Conduct analogue), counsel the same result as *In re Initial Public Offering Securities Litigation*. The Committee on Codes of Conduct has instructed that the provision analogous to § 455(f) "applies to cases in which a judge has already expended a substantial amount of time, cases in which a judge has expended no time, and those in between." Committee on Codes of Conduct, Advisory Op. 69 (2009). "Accordingly, if a judge learns of a disqualifying financial interest in a party before expending judicial time on the case, the judge may avoid disqualification by divesting himself or herself of the interest." *Id.*

Going further, the Committee has instructed that in the context of class actions, putative class members are not parties before certification, and "[a] judge who is a putative member of an uncertified class, but who does not have a pre-existing asset, property interest, or contractual relationship linked to the proceeding, does not have a financial interest in the subject matter or

other interest that could be substantially affected."[5]  Compendium of Selected Opinions Concerning Canon 3 § 3.1-6[4](a-1).  While I am not prepared to go so far as to say that putative membership in an uncertified class gives rise to *no* financial interest under § 455(b)(4), I find, for the reasons discussed earlier and below, that renouncing such membership cures the conflict.

Finally, allowing a judge to prospectively divest her financial interest to avoid recusal makes sense, because otherwise a judge would be forced to recuse herself, but could then divest and be eligible to have the matter reassigned to her.  *See* Committee on Codes of Conduct, Advisory Op. 69 (2009).  Congress could not have intended that absurd result, especially given its practical concern for the efficient use of judicial resources.  *See In re Literary Works*, 509 F.3d at 140 ("[W]e as judges must balance our duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute.") (citation omitted).[6]

   2.  *Section 455(a)*

Section 455(a) requires a judge to recuse herself when her "impartiality might reasonably be questioned."  Recusal under § 455(a) "requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'"  *In re Aguinda*, 241 F.3d at 201 (alteration in original) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).  Section 455(a) may

---

[5] Putative membership in an uncertified class may, however, give rise to an appearance of impartiality under Canon 3C(1), the analog to § 455(a).  *See* Compendium of Selected Opinions Concerning Canon 3 § 3.1-6[4](a-1).  I discuss this more fully in the next section.

[6] The Second Circuit explained that Congress intended § 455(f) to conserve judicial resources by avoiding "recusal of a judge who, unaware of the conflict, has devoted substantial time to a case."  *In re Literary Works*, 509 F.3d at 143.  The court distinguished this situation from the outset of a case, where "reassignment entails few or no costs."  *Id.*  Nevertheless, recusal and reassignment even at the early stages of this case would entail some costs, including delay.  In any event, I find that divestiture cures the grounds for recusal, and I am thus under an obligation to preside over the case.  *See In re Aguinda*, 241 F.3d at 201.

require recusal even where the standards for § 455(b) are not met, *In re Certain Underwriter Defendants*, 294 F.3d at 306, but "[w]here a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required," *Lovaglia*, 954 F.2d at 815.

The amount of money at stake, see note 2 above, is minimal – surely not enough to influence the judgment of a judge – and there are no circumstances suggesting that renouncing that amount would cause resentment toward either side of the case.[7]  Further, after I disclosed to the parties at the December 1, 2016 conference that I was a putative class member, Plaintiff expressed no opinion as to my recusal, and Defendant argued that recusal was not warranted. (*See* Doc. 23.)  Under these circumstances, I find that no one could reasonably question my impartiality in presiding over this case.  *See In re Certain Underwriter Defendants*, 294 F.3d at 306 (after disclosing conflicts and waiving any interest as putative class member, § 455(a) did not mandate recusal); Compendium of Selected Opinions Concerning Canon 3 § 3.1-6[4](a-1) ("[I]f the judge's interest is the same as any putative class member, the judge's impartiality may reasonably be questioned . . . , and the judge should either recuse . . . *or renounce putative class membership and waive any future claim*.") (emphasis added).

## II. CONCLUSION

I hereby renounce my membership in the putative class and waive any claim I may have arising from the representations made with respect to the toothpaste's whitening capability. Accordingly, for the reasons stated above, I find that recusal is not required.  The parties are to brief Defendant's motion to dismiss pursuant to the briefing schedule set forth at the December 1, 2016 conference.  Any party contemplating any other motions at this time, including a motion

---

[7] Further, because – as I explained at the December 1, 2016 conference – I did not notice or rely on the alleged misrepresentations in purchasing Defendant's product, I have no personal knowledge or feelings about these representations.

to stay discovery or to transfer the case, should submit a pre-motion letter pursuant to my

Individual Practices.

**SO ORDERED.**

Dated: January 10, 2017
      White Plains, New York

                                                          _____
                                                          CATHY SEIBEL, U.S.D.J.